**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

GABOR KARMAN,

                          Plaintiff,

      v.

U.S. CUSTOMS AND BORDER
PROTECTION,

                         Defendant.

No. 8:23-CV-345
(LEK/CFH)

_____

**APPEARANCES:**

Gabor Karman
Unit 309
#550 Second St. E.
Cornwall, Ontario K6H-2VT
Canada
Plaintiff pro se

## REPORT-RECOMMENDATION AND ORDER

### I. Background

Plaintiff pro se Gabor Karman ("plaintiff") commenced this action on March 20, 2023, by filing a complaint. See Dkt. No. 1 ("Compl."). Plaintiff also filed an application to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP for the purpose of filing.[1]

---

[1] Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action.

**II. Initial Review**

**A. Legal Standard**

Section 1915[2] of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (citation and internal quotation marks omitted). This does not mean the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds on which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Pro se litigants are "not exempt . . . from compliance with relevant rules of procedural and

---

[2] The language of 1915 suggests an intent to limit availability of IFP status to prison inmates. See 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. See, e.g., Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002). Specifically, "[i]n 1959, Congress amended the statute to change the word 'citizen' to 'person'." Harlem River Consumers Co-op., Inc. v. Associated Grocers of Harlem, Inc., 71 F.R.D. 93, 95 (S.D.N.Y. 1976).

substantive law[.]" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought . . . ." FED. R. CIV. P. 8(a)(1), (3). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d)(1).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted).  A complaint that fails to comply with the pleading requirements "presents far too [] heavy [a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  The Second Circuit has held that "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citation omitted).  However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citation omitted).  If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint.  See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).

### B. Plaintiff's Complaint

Plaintiff alleges that as he was driving from Canada into the United States ("U.S."), he was stopped by U.S. Customs and Border Patrol ("CBP") to check his passport.  See Compl. at 3.  He was informed that he could not enter the U.S. "due to non-vaccination-related issues and needs to return to Canada." Id.  Plaintiff was going to the Walmart in Massena, New York "to pick 5 pairs of pre-ordered slippers." Id.  Plaintiff contends that he "frequently crossed the border into the USA to shop in Massena NY Walmart or simply to buy a lot of Dunkin Donuts." Id.  A CBP agent

instructed plaintiff to go inside of a building to acquire "return papers" and to give the agent his car keys. Id.  Plaintiff told the agent that he would park his own car "due to its 30 yrs of age and it is to be fragile." Id.  The agent "forced" plaintiff out of the car "with heavy voice" telling plaintiff to enter the building. Id.  Three Border Patrol agents then pushed plaintiff's car away from the inspection booth because they were unable to start it.  See id.  When plaintiff entered the building, an agent pulled plaintiff's arm behind his back and began to handcuff plaintiff.  See id.  The agent "threatened to put [plaintiff in] jail for the night if he did not remain silent." Id.  Plaintiff asked to call his attorney and the agent released plaintiff from his grasp.  See id.  After approximately an hour and a half "interrogation," plaintiff "was forced to submit his fingerprints (against his will)." Id.  Plaintiff "was released from Massena N.Y. US border to drive back to Canada[]" around 3pm. Id.  Liberally construed, plaintiff's complaint raises Fourth and Fifth Amendment claims.

### III.  Analysis

"The Fourth Amendment imposes limits on search-and-seizure powers in order to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." United States v. Martinez-Fuerte, 428 U.S. 543, 554 (1976).  "The failure of law enforcement officials to administer *Miranda* warnings prior to questioning a person who is in custody is a violation of a suspect's rights under the Fifth Amendment." United States v. Ayalew, 563 F. Supp. 2d 409, 415 (N.D.N.Y. 2008) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)).

However, "[i[t is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "There is a legitimate governmental interest in preventing the illegal entry of aliens into the country." United States v. Tehrani, 49 F.3d 54, 58 (2d Cir. 1995). Specifically, the Fourth Amendment applies to "the people" and the "textual exegesis" of the phrase "suggests that 'the people' protected by the Fourth Amendment . . . refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." United States v. Verdugo-Urquidez, 494 U.S. 259, 265 (1990) (concluding that a Mexican citizen did not have Fourth Amendment rights to challenge a search of his home located in Mexico by U.S. federal agents); United States v. Irving, 452 F.3d 110, 123 (2d Cir. 2006) (citations omitted) (explaining that searches at the borders are an exception to the warrant required and "routine border searches of a person's belongings are made reasonable by that person's decision to enter this country . . . ."). Additionally, "[i]mmigration rules and regulations permit border questioning as a routine and necessary predicate to enforcement of immigration laws." Ayalew, 563 F. Supp. 2d at 415 (citations omitted). "*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." Rosa v. McCray, 396 F.3d 210, 220 (2d Cir. 2005) (citation omitted).

It is unclear whether plaintiff was on U.S. soil when the alleged conduct occurred as he was not permitted to enter the U.S. but was inside of the CBP building. See Compl. at 3. However, the Court need not decide whether plaintiff was in fact on U.S.

6

soil or whether plaintiff's allegations sufficiently state Fourth or Fifth Amendment claims because a cause of action against CBP or its agents does not exist under Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

"It is well-settled that a [42 U.S.C.] § 1983 claim does not lie against the federal government, its agencies, or employees." Feldman v. Lyons, 852 F. Supp. 2d 274, 278 (N.D.N.Y. 2012) (collecting cases). In 1971, in Bivens, "the Supreme Court recognized an implied private cause of action for damages against federal officers who violate a citizen's constitutional rights." Id. "*Bivens* actions, although not precisely parallel, are the federal analog to § 1983 actions against state actors." Id. (citing Chin v. Bowen, 833 F.2d 21, 24 (2d Cir. 1987)). Yet, "[b]ecause implied causes of action are disfavored, the Court has been reluctant to extend *Bivens* liability 'to any new context or new category of defendants." Krul v. Brennan, 501 F. Supp. 3d 87, 101 (N.D.N.Y. 2020) (quotation marks omitted) (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). "[S]ince *Bivens* was decided, the Supreme Court has extended the precedent's reach only twice[.]" Doe v. Hagenbeck, 870 F.3d 36, 42-43 (2d Cir. 2017); see also Davis v. Passman, 442 U.S. 228, 248-49 (1979) (extending Bivens to a Fifth Amendment employment discrimination claim); Carlson v. Green, 446 U.S. 14, 23-24 (1980) (extending Bivens in an Eighth Amendment inmate case).

Importantly, Bivens remedies, in the few circumstances under which they are available, are only available against federal agents in their individual capacities. A Bivens remedy is unavailable against a federal agency or federal agents in their official capacities. See Rivera v. Fed. Bureau of Investigation, No. 5:16-CV-00997 (NAM/TWD), 2016 WL 6081435, at *4 (N.D.N.Y. Sept. 13, 2016) (citation omitted) ("The

7

only remedy available in a *Bivens* action is an award of monetary damages from defendants in their individual capacities."), report and recommendation adopted, 2016 WL 6072392 (N.D.N.Y. Oct. 17, 2016).³  This is "[b]ecause an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived."  Robinson v. Overseas Mil. Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994); see F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); Mikhaylov v. United States, 29 F. Supp. 3d 260, 272-73 (E.D.N.Y. 2014) (citations omitted) ("*Bivens* merely permits constitutional tort claims for monetary relief against federal agents in their personal capacities.  Similar claims, however, may not be brought against the United States, federal agencies, or, by the same token, federal agents in their official capacities."); see also Ross v. Dempsey Unif. & Linen Supply, No. 3:16-CV-1208 (NAM/DJS), 2016 WL 8652438, at *7 (N.D.N.Y. Dec. 29, 2016), report and recommendation adopted, 2017 WL 1207832 (N.D.N.Y. Mar. 31, 2017), aff'd, 739 F. App'x 59 (2d Cir. 2018) (summary order); Bullock v. DSS, CPS, Comm'r, No. 5:17-CV-1302 (BKS/TWD), 2018 WL 1115218, at *7 (N.D.N.Y. Jan. 18, 2018), report and recommendation adopted, 2018 WL 1111059 (N.D.N.Y. Feb. 26, 2018).

  Last year, the Supreme Court reiterated that "a cause of action under *Bivens* is 'a disfavored judicial activity.'"  Egbert v. Boule, 142 S. Ct. 1793, 1803 (2022) (quoting Ziglar v. Abbasi, 582 U.S. 120, 135 (2017)).  Generally, when analyzing whether a

---

³ All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

cause of action existed under Bivens, courts have used "a two-step process." McGowan v. United States, 825 F.3d 118, 123 (2d Cir. 2016) (per curiam). "First, the court must determine whether the underlying claims extend *Bivens* into a 'new context.'" Id. (quoting Turkmen v. Hasty, 789 F.3d 218, 234 (2d Cir. 2015), reversed in part on other grounds by Ziglar, 582 U.S. at 138-56). "If the case is different in a meaningful way from previous *Bivens* cases decided by th[e Supreme] Court, then the context is new." Ziglar, 582 U.S. at 139.

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

Id. at 139-40. "If the plaintiff's claims arise in a new context, the court then asks (a) whether there is an alternative remedial scheme available to the plaintiff,' and, even if there is not, (b) whether special factors counsel hesitation in creating a *Bivens* remedy." McGowan, 825 F.3d at 123 (citation and quotation marks omitted).

The Supreme Court acknowledged that "cases have framed the inquiry as proceeding in two steps[,]" but concluded that "those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." Egbert, 142 S. Ct. at 1803 (citing Hernandez v. Mesa, 140 S. Ct. 735, 743 (2020)). The Court explained, "[i]f there is a rational reason to think that the answer is 'Congress'—as it will be in most every case—no *Bivens* action may lie." Id. (internal citation omitted). To answer the one question, the Court looked to the same factors commonly discussed concerning extension of Bivens: whether a case

9

presents a new context with new defendants and whether there are alternative remedies set forth by Congress under which relief could be sought. See id. The Court first noted that "a new context arises when there are 'potential special factors that previous *Bivens* cases did not consider[,]'" such as "a case that involves a 'new category of defendants[.]'" Id. (quoting Ziglar, 137 S. Ct. at 1860; Correctional Services Corp. v. Malesko, 534 U.S. 61, 68 (2001)). This is "largely because they represent situations in which a court is not undoubtedly better positioned than Congress to create a damages action." Id. Additionally, "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" Id. (quoting Ziglar, 137 S. Ct. at 1858). "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" Id. (citation omitted).

In Egbert, the respondent was a U.S. citizen who owned property in the U.S., but his "property line actually extend[ed] five feet into Canada." Egbert, 142 S. Ct. at 1800. The respondent housed immigrants in his home, which he marketed as a bed-and-breakfast named "Smuggler's Inn." Id. A CBP agent came onto the respondent's property to check a guest's immigration status and when the respondent asked the agent to leave, the agent "lifted him off the ground," "threw him against the SUV[,]" and threw him to the ground." Id. at 1801. The respondent alleged Fourth Amendment excessive force and First Amendment retaliation claims against the CBP agent. See id. at 1802.

The Egbert Court concluded that *Bivens* could not be extended to provide a cause of action for the respondent's claims. See Egbert, 142 S. Ct. at 1808-09. In discussing alternative remedial structures, the Supreme Court explained that "[t]he U. S. Border Patrol is statutorily obligated to 'control, direc[t], and supervis[e] . . . all employees.'" Id. at 1806 (quoting 8 U.S.C. § 1103(a)(2)). "And, by regulation, Border Patrol must investigate '[a]lleged violations of the standards for enforcement activities' and accept grievances from '[a]ny persons wishing to lodge a complaint.'" Id. (quoting 8 C.F.R. §§ 287.10(a)-(b)). Although the respondent argued that the administrative grievance process was inadequate, the Court explained it had "never held that a *Bivens* alternative must afford rights to participation or appeal. That is so because *Bivens* 'is concerned solely with deterring the unconstitutional acts of individual officers'—*i.e.*, the focus is whether the Government has put in place safeguards to 'preven[t]' constitutional violations 'from recurring.'" Id. (quoting Malesko, 534 U.S. at 71, 74)). The Court stated, if "Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." Id. at 1807. "That is true even if a court independently concludes that the Government's procedures are 'not as effective as an individual damages remedy.'" Id. (quoting Bush v. Lucas, 462 U.S. 367, 372 (1983)).

Similarly, in Hernandez v. Mesa, the Court declined to recognize a Bivens cause of action for alleged Fourth and Fifth Amendment violations after a CBP agent shot a child who was on the Mexico side of the U.S. and Mexico Border. See 140 S. Ct. 735, 740, 749-50 (2020). The Court looked to other remedies crafted by Congress and

11

concluded that a "pattern of congressional action—refraining from authorizing damages actions for injury inflicted abroad by Government officers, while providing alternative avenues for compensation in some situations—gives us [] reason to hesitate about extending *Bivens* in this case." Id. at 749.  The Court turned to the Federal Tort Claims Act, the Torture Victim Protection Act, and the Foreign Claims Act as examples of alternative remedial structures.  See id. at 748-49.

In Hernandez and Egbert, the Court focused on "national security implications" which, along with foreign policy, "are rarely proper subjects for judicial intervention[.]" Egbert, 142 S. Ct. at 1804-05 (quoting Haig v. Agee, 453 U.S. 280, 292 (1981)); see also Hernandez, 140 S. Ct. at 744-45 ("A cross-border shooting is by definition an international incident; it involves an event that occurs simultaneously in two countries and affects both countries' interests. . . . .   In the absence of judicial intervention, the United States and Mexico would attempt to reconcile their interests through diplomacy—and that has occurred.").  The Court explained in Hernandez,

> the responsibility for attempting to prevent the illegal entry of dangerous persons and goods rests primarily with the U.S. Customs and Border Protection Agency, and one of its main responsibilities is to "detect, respond to, and interdict terrorists, drug smugglers and traffickers, human smugglers and traffickers, and other persons who may undermine the security of the United States." 6 U.S.C. § 211(c)(5).  While Border Patrol agents often work miles from the border, some, . . . are stationed right at the border and have the responsibility of attempting to prevent illegal entry.  For these reasons, the conduct of agents positioned at the border has a clear and strong connection to national security . . . .

140 S. Ct. at 746.

Following the Supreme Court's decisions in Hernandez and Egbert, district courts have concluded that a Bivens action does not exist for claims against federal immigration officials.  See, e.g., Diaz Cruz v. United States, No. 20-CV-891 (EK/SJB),

2023 WL 2574756, at *2-4 (E.D.N.Y. Mar. 20, 2023) (concluding that the plaintiff could not raise a Bivens claim under the Fourth or Fifth Amendments against an Immigration and Customs Enforcement officer for allegedly shooting an unarmed Mexico native who was in the U.S. on a tourist visa); Morales v. United States, No. 18-CV-4247 (CBA/RER), 2023 WL 2129580, at *1, *10 (E.D.N.Y. Feb. 17, 2023) ("[G]iven binding Supreme Court precedent, [the plaintiff] cannot maintain his Fourth Amendment claim under *Bivens*[]" where he claimed that he was detained and questioned by a CBP agent at an airport for approximately two hours); Lovell v. Parker, 618 F. Supp. 3d 127, 139 (E.D.N.Y. 2022) ("Under binding Supreme Court precedent, then, [the plaintiff] may not maintain a cause of action against the individual Defendants pursuant to *Bivens*. [The plaintiff] brings suit against individual CBP officers on duty at a border checkpoint within an international airport. . . . If anything, this case is more straight-forward than [Egbert]; whereas [Egbert] involved the actions of CBP officers in the domestic territory of the United States, this action involves conduct by CBP officials at an international border, where considerations of border security are even more pronounced."); Ortega v. U.S. Customs & Border Prot., No. 21-CV-11250 (FDS), 2023 WL 2187896, at *6 (D. Mass. Feb. 23, 2023) ("[T]he allegedly unlawful searches and seizures were conducted by CBP officers at Logan Airport, and were directed to individuals entering the United States from the Dominican Republic. . . . They were searches and seizures at the border, and therefore fall squarely within the scope of *Egbert*. Under the circumstances, the Court finds that the Fourth Amendment claims asserted here represent an unwarranted extension of *Bivens* to a new context[.] . . . The Fifth Amendment claims [] unquestionably arise in a new *Bivens* context, and accordingly . . . will be dismissed.").

Plaintiff names only CBP as a defendant. See Compl. at 1. He does not name an individual defendant. See id. at 1-4. The CBP is a federal agency and no Bivens cause of action can be raised against it as federal agencies are immune from suit. See Ross, 2016 WL 8652438, at *7; Rivera, 2016 WL 6081435, at *4; Meyer, 510 U.S. at 475; Bullock, 2018 WL 1115218, at *7. Thus, it is recommended that the complaint be dismissed.

Insofar as plaintiff could be seeking to raise a claim against the individual CBP officers, the three alternative statutory remedies outlined by the Hernandez Court would likely be inapplicable to plaintiff's claim: (1) the Federal Tort Claims Act bars "[a]ny claim arising in a foreign country[]"; (2) the Torture Victim Protection Act allows a damages action "by or on behalf of a victim of torture or an extrajudicial killing carried out by a person who acted under the authority of a foreign state[]"; and (3) the Foreign Claims Act and other statutory provisions allow the Secretary of Defense or Homeland Security "to appoint claims commissions to settle and pay claims for personal injury and property damage resulting from the noncombat activities of the Armed Forces outside this country[]" and the State Department can settle claims related to foreign countries. Hernandez, 140 S. Ct. at 748-49 (citing 28 U.S.C. §§ 1350, 2679, 2680(k); 10 U.S.C. § 2734); see also Tabbaa v. Chertoff, 509 F.3d 89, 92-93 (2d Cir. 2007) (explaining that customs and border patrol falls under the control of the Department of Homeland Security); 10 U.S.C.A. § 101(a)(4) ("The term 'armed forces' means the Army, Navy, Air Force, Marine Corps, Space Force, and Coast Guard.").

It appears that plaintiff's claims arise on Canadian soil as he was not permitted into the U.S., he was not a victim of torture or an extrajudicial killing, and the CBP

agents are not members of the Armed Forces, nor did they work under the Department of State.  See Compl. at 3.  Thus, the Hernandez remedies do not appear available to plaintiff.  See Hernandez, 140 S. Ct. at 748-49.  Additionally, in Egbert, "the Executive Branch already had investigated alleged misconduct by the defendant Border Patrol agent."  Egbert, 142 S. Ct. at 1806.  Here, plaintiff has not alleged any such Executive investigation.  See Compl. at 3.

As to whether plaintiff raises claims in a "new" context, Bivens concerned an unreasonable search and seizure claim under the Fourth Amendment—which is precisely what plaintiff's complaint raises.  See Compl. at 3; see also Bivens, 403 U.S. at 389-95.  As Justice Sotomayor explained in Egbert,

> [The respondent's] Fourth Amendment claim does not arise in a new context. *Bivens* itself involved a U. S. citizen bringing a Fourth Amendment claim against individual, rank-and-file federal law enforcement officers who allegedly violated his constitutional rights within the United States by entering his property without a warrant and using excessive force.  Those are precisely the facts of [the respondent's] complaint.  The only arguably salient difference in "context" between this case and *Bivens* is that the defendants in *Bivens* were employed at the time by the (now-defunct) Federal Bureau of Narcotics, while Agent Egbert was employed by CBP. . . .  [T]his Court's precedent instructs that some differences are too "trivial . . . to create a new *Bivens* context."  That it was a CBP agent rather than a Federal Bureau of Narcotics agent who unlawfully entered [the respondent's] property and used constitutionally excessive force against him plainly is not the sort of "meaningful" distinction that our new-context inquiry is designed to weed out.

142 S. Ct. at 1814 (citation omitted) (Justice Sotomayor, concurring in part, dissenting in part).

However, this case "is more straight-forward than" Egbert because it does not involve a U.S. citizen, it does not concern property in the U.S., and it concerns "the conduct of agents positioned at the border[.]"  Lovell, 618 F. Supp. 3d at 139;

15

Hernandez, 140 S. Ct. at 746.  CBP agents are new defendants not previously considered by the three Bivens cases.  See Bivens, 403 U.S. at 389; Davis, 442 U.S. at 230-31; Carlson, 446 U.S. at 16.  Plaintiff's allegations also highlight immigration concerns and national security—issues not considered by the three Bivens cases and which are generally under the control of the Executive.  See Hernandez, 140 S. Ct. at 746-49; Egbert, 142 S. Ct. at 1804-06.  To the extent plaintiff's complaint could be interpreted as raising a Fifth Amendment claim, although the Court extended Bivens to a Fifth Amendment claim in Davis, that case concerned a sex discrimination allegation against a U.S. Congressman. 442 U.S. at 230-31.  The claims presented in plaintiff's complaint arise in an entirely different context.  See Compl. at 3; see also Ziglar, 137 S. Ct. at 1859.  Additionally, CBP has a grievance procedure "pertaining to violations of enforcement standards[.]"  8 C.F.R. § 287.10(b); see also 8 C.F.R. § 287.8; Egbert, 142 S. Ct. at 1806-07.  The availability of this administrative remedy, regardless of its adequacy or effectiveness, is evidence that Congress intended to outline the appropriate remedy for claims such as plaintiff's claims.  See Egbert, 142 S. Ct. at 1807 ("[T]he question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts.").

       Plaintiff's complaint raises a "new" context and there are factors which counsel the Court's hesitation to extend Bivens because (1) the complaint concerns an international border; (2) the complaint concerns different federal employees than considered in the three Bivens cases; and (3) CBP has an administrative review process for agents' actions.  Declining to recognize a Bivens cause of action is supported by the Supreme Court's assertion that "recognizing a cause of action under

16

*Bivens* is 'a disfavored judicial activity[]'" and its two recent decisions declining to extend Bivens into the precise immigration context that plaintiff's complaint raises.  Egbert, 142 S. Ct. at 1804 (citation omitted).  Therefore, it is recommended that plaintiff's complaint be dismissed as he cannot state a claim for a relief against CBP, a federal immigration agency, or its agents.

### IV.  Amendment

"Generally speaking, '[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Edwards v. Penix, 388 F. Supp. 3d 135, 144 (N.D.N.Y. 2019) (quoting Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014)). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.'" Id. at 144-45 (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)).

Courts have repeatedly dismissed Bivens claims with prejudice and without leave to amend because the lack of an existing Bivens remedy is a substantive defect and not a pleading defect.  See Coleman v. Olinski, No. 5:16-CV-00838 (MAD/DEP), 2017 WL 752182, at *4 (N.D.N.Y. Feb. 27, 2017) ("[T]here is no possible basis for a *Bivens* action against the Social Security Commissioner.  Therefore, [the p]laintiff's claims in all four complaints are dismissed with prejudice."); see also Cox v. New York State, No. 1:23-CV-0060 (MAD/CFH), 2023 WL 2770368, at *10 (N.D.N.Y. Apr. 4, 2023) (dismissing

Bivens claim with prejudice); Bullock, 2018 WL 1115218, at *7 (same); Wilson v. Bolt, No. 9:18-CV-00416 (DNH/TWD), 2019 WL 5197335, at *7 (N.D.N.Y. May 28, 2019) (same), report and recommendation adopted, 2019 WL 3561742 (N.D.N.Y. Aug. 6, 2019).  "Absent a Supreme Court decision creating a new *Bivens* remedy on all fours with [p]laintiff's alleged *Bivens* Claims, [p]laintiff's *Bivens* Claims cannot survive a motion to dismiss." Negron v. United States, No. 19-CV-05442 (PMH), 2020 WL 5634304, at *10 (S.D.N.Y. Sept. 21, 2020).  There is no Supreme Court decision that has created a new Bivens remedy which would allow plaintiff's claim to survive a motion to dismiss let alone initial review.  See Resto-Otero v. Mohammad, No. 9:17-CV-1115 (GLS/DEP), 2018 WL 5795508, at *5 (N.D.N.Y. Oct. 3, 2018) (collecting cases) ("As several courts have recognized, a court effectively evaluates whether a complaint 'fails to state a claim upon which relief may be granted' on initial review under the same standard that governs in the case of a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), report and recommendation adopted, 2018 WL 5792760 (N.D.N.Y. Nov. 5, 2018).  Rather, there are two Supreme Court decisions instructing that it will not create such a remedy.  See Egbert, 142 S. Ct. at 1802-09; Hernandez, 140 S. Ct. at 744-50.  As plaintiff cannot state a Bivens cause of action under the Supreme Court's current precedent, there is no pleading which could cure the defect, and it is recommended that plaintiff's complaint be dismissed with prejudice and without leave to amend.

## V. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED** for purposes of filing only; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE and WITHOUT LEAVE TO AMEND**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[4]

Dated: September 7, 2023
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[4] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).